FILED
CLERK
4:34 pm, Jan 11, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GAC INTERNATIONAL, LLC,

                                  Plaintiff,

      -against-

ROTH LICENSING, LLC,

                                 Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
15-CV-2375 (JMA) (AKT)

**AZRACK, United States District Judge:**

       Plaintiff GAC International, LLC ("GAC") commenced this action against defendant Roth Licensing, LLC ("Roth") seeking a declaratory judgment concerning Roth's allegations of trademark infringement and unjust enrichment.[1] In June 2016, the Court granted Roth's motion to compel arbitration. (ECF No. 30.) In November 2017, the arbitrator, Retired Associate Justice of the California Court of Appeals James Lambden (the "Arbitrator"), issued an award in favor of Roth, finding GAC liable on all claims and awarding Roth injunctive and monetary relief.

       GAC now moves to vacate the award pursuant to § 10(a)(4) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, on the ground that the Arbitrator exceeded his authority by ruling on GAC's motion to recuse the Arbitrator. Roth opposes GAC's motion, requesting confirmation of the award and seeking post-award, prejudgment interest. For the following reasons, the award is confirmed and Roth's request for prejudgment interest is denied.

## I. BACKGROUND

       The underlying dispute involves the intellectual property rights of the late Dr. Ronald Roth, a well-known practitioner and pioneer in the field of orthodontics. After Dr. Roth's death, the

---

[1] In January 2017, GAC merged into Dentsply Sirona Orthodontics, Inc. ("Dentsply"). During the arbitration and pursuant to the parties' stipulation, Dentsply was substituted for GAC but the parties and the Arbitrator continued to refer to plaintiff as GAC for consistency. The Court will do the same.

rights in his intellectual property passed to Roth. In 2013, Roth and GAC, a distributor of orthodontic products and services, entered into a three-year licensing agreement (the "Agreement"). The Agreement contains, inter alia, an arbitration clause providing that "[a]ny claim or controversy arising out of or relating to this License Agreement shall be settled by arbitration through ADR Services, Inc. ("ADR Services") in San Francisco, California" and that "[a]rbitration shall be conducted in accordance with ADR Services' arbitration rules, as those rules exist at that time." (Agreement ¶ 4.5.) It also provides that, "[u]nless the issue of arbitrability has been previously determined by the court, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (ADR Services Rule 7.)

In April 2016, GAC filed the instant suit against Roth seeking a declaratory judgment. In June 2016, the Court granted Roth's motion to compel arbitration and stayed proceedings pending arbitration of GAC's claims. (ECF No. 30.)

The parties then engaged in discovery and agreed to bifurcate the proceedings for the liability and damages issues. At the first liability hearing in February 2017, the Arbitrator heard opening statements and the testimony of nine witnesses, including the testimony of Dr. Emanuel Wasserman. (See Hr'g Tr., Ex. C to GAC Mem. at ¶¶ 4, 271, 553.) After the conclusion of the proceedings, the Arbitrator issued an interim decision on liability, finding GAC liable on all claims. (See Interim Arbitration Decision Regarding Liability, Ex. O to GAC Mem.) GAC subsequently submitted a letter motion alleging that Dr. Wasserman perjured himself and requesting vacature of the interim decision as well as the reopening of the liability hearing. (GAC Letter Mot., Ex. U to Mem. in Opp. to Mot. to Vacate Arb. Award ("Roth Mem.") The Arbitrator granted GAC's motion over Roth's objection, vacating the interim decision and reopening the

liability hearing to consider the perjury allegations. (See Arb. Management Order #10, Ex. V to Roth Mem.; see also Arb. Management Order #11, Ex. W to Roth Mem.)

In GAC's pre-hearing brief for the reopened liability hearing, GAC requested that the Arbitrator "recuse himself", "stay the hearing pending ADR Services' consideration of the request for a new hearing under ADR Services Rule 10(E)", or have ADR Services "suspend the [reopened liability hearing] until a new arbitrator is prepared to handle the case." (GAC's Br. Regarding Re-Opening the Hr'g on Liability and Req. for Recusal ("GAC's Re-Opening and Recusal Br."), Ex. R to GAC Mem. at 21–22.) ADR Services Rule 10(E) provides that "a party may challenge the continued service of an arbitrator on any of the 'judicial-type' grounds listed in [California Code of Civil Procedure] Section 170.1." Specifically, GAC invoked Section 170.1(6)(A) of the California Code of Civil Procedure, which provides for disqualification of an arbitrator if a "person aware of the facts might reasonably entertain doubt that [an arbitrator] would be able to be impartial." Cal. Civ. Proc. Code § 170.1(6)(A). In support of this request, GAC argued, in sum and substance, that "the influence of Dr. Wasserman's false testimony on the Arbitrator's decision had poisoned the proceedings and unfairly prejudiced the Arbitrator against GAC" and that "[a]fter accepting false testimony to find GAC liable, the Arbitrator could not now simply un-decide liability and restore neutrality." (GAC Mem. at 12.) GAC also argued its recusal motion during a subsequent telephonic status conference during which it invoked ADR Services Rule 11, which provides, "[u]pon objection to the continued service of a neutral arbitrator, ADR Services shall refer the matter to the Court for determination, which shall be conclusive." (Arb. Management Order 414 Regarding GAC's Request for Recusal of Arbitrator ("Recusal Decision"), Ex. P to GAC Mem. at 2.)

Roth opposed GAC's recusal motion, arguing that "[t]here is no ground for disqualification where a judge forms a belief on a witness' testimony or other evidence in the case" and that "[i]t is objectively unreasonable to claim that [the Arbitrator] will be biased going forward simply because [he] believed Dr. Wasserman was credible at a prior hearing." (Roth's Br. in Opp. to Re-Opening the Hr'g on Liability and Req. for Recusal, Ex. X to Roth Mem. at 9.) Rather, the Arbitrator's conduct "fully supports the conclusion that [he] is acting impartially and without bias" because "[upon] learning of GAC's accusations against Dr. Wasserman, [the Arbitrator] [] granted GAC's motion for a new hearing and vacated the interim decision." (Id.) Additionally, Roth argued that the "ADR Services Arbitration Rules do not . . . require, nor should [] be interpreted to require, 'immediate' referral of the matter to a court, or the suspension of ongoing proceedings." (Id. at 10–11.)

Before denying GAC's recusal motion on the merits, the Arbitrator found the motion arbitrable. Specifically, the Arbitrator found that the Agreement permits him to preliminarily rule on the recusal motion and preserves the issue for any post-award motions to confirm or vacate a final award. (Recusal Decision, at 4.) The Arbitrator rested his conclusion on three points. First, he noted that "[t]here is no mention anywhere in the ADR Services Rules of any mechanism for such a 'referral to the Court'" and "[i]t is undisputed that ADR Services is not a party to any underlying court proceeding and therefore has no ability to appear in a pending case or to otherwise petition a court to rule on a party's objection." (Id.) Second, Rule 11 and Rule 10(E) can only be read to "permit a party to preserve objections" since the latter rule "cannot be interpreted to require ADR Services to act on a party's behalf by petitioning a court or replacing an arbitrator or suspending proceedings." (Id.) A contrary interpretation "would permit the disruption of the arbitration proceeding at any time and thus obviate the underlying premise of neutral efficiency

4

that is fundamental to arbitration." (Id.) And finally, "as with most procedural matters in arbitration, the Arbitrator must make the initial decision on such an objection; and that decision is not 'shielded from review' because it can be reviewed by the court that is asked to confirm or set aside the ultimate arbitration award." (Id.)

The Arbitrator then denied GAC's recusal request on the merits, stating that "[t]here is no authority providing a ground for disqualification where a judge or arbitrator initially forms a belief in the honesty of a witness and later is asked to change that view based on other evidence" and that "the evidence to support GAC's accusations of perjury has not yet been produced." (Id. at 5.)

After the second liability hearing that included GAC's evidence of Dr. Wasserman's perjury, the Arbitrator once again found GAC liable on all claims and issued an interim award in Roth's favor. (See Interim Arb. Decision Regarding Liability Following Reconvened Evidentiary Hr'g, Ex. Y to Roth Mem.) After additional briefing and argument, the Arbitrator issued a final award (the "Award") that GAC now moves to vacate. (See Final Arb. Award, Ex. M. to GAC Mem.)

## II. DISCUSSION

### A. 9 U.S.C. § 10(a)(4) Provides No Basis to Vacate the Award

#### 1. Judicial Review of Arbitration Awards Under 9 U.S.C. § 10(a)(4)

"[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997) (internal quotations omitted). A court may vacate an award only on the narrow grounds set forth in Section

10(a) of the FAA or for "manifest disregard of the law." See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010).

The only ground upon which GAC seeks vacatur is 9 U.S.C. § 10(a)(4), which allows a district court to vacate an award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4).[2] A court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." DiRussa, 121 F.3d at 824.

GAC seeks to set aside the Award on the ground that the Arbitrator exceeded his authority by ruling on GAC's recusal motion and not referring it to the Court or ADR Services. (GAC Mem. at 12.) Specifically, GAC argues that, by not referring the motion to the Court or ADR Services, the "Arbitrator rejected the express terms of the parties' agreement and, instead, imposed his own vision of justice" because "ADR Rule 11 is explicit language stating that recusal motions are not arbitrable." (Id. at 16, 19.) Roth opposes GAC's motion, arguing that GAC submitted the recusal request to the Arbitrator for determination and that the Arbitrator did not exceed his authority under the Agreement by deciding the recusal issue. (Roth Mem. at 16.) Roth also argues that any alleged error by the Arbitrator in addressing GAC's recusal request was harmless because the recusal request was meritless. (Id. at 22.) In essence, GAC attempts to unravel the entire arbitration based on its argument that the Arbitrator improperly decided GAC's frivolous recusal motion.

---

[2] The FAA also provides for vacature of an award "where there was evident partiality or corruption in the arbitrators, or either of them." 10 U.S.C. § 10(a)(2). GAC, however, has not moved for vacature under that provision.

The Court finds none of GAC's arguments to be persuasive. As explained below, it was up to the Arbitrator to decide arbitrability and the Arbitrator's ruling on the arbitrability of the recusal request presents no basis to vacate the award. In any event, even if it was improper for the Arbitrator to decide GAC's recusal motion, it is clear that the motion was frivolous and would have been denied by the Court. Accordingly, any such error by the Arbitrator would have been harmless and not a basis to vacate the Award.

**2. The Question of Arbitrability was Reserved to the Arbitrator**

GAC argues that the question of whether a recusal request under Rule 11 is arbitrable is a question for the Court to determine, citing Katz v. Feinberg, 290 F.3d 95 (2d Cir. 2002) and NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010 (2d Cir. 2014). The Court disagrees and finds both Katz and NASDAQ to be distinguishable.

"Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (alterations in original) (quoting AT&T Technologies, Inc. v. Comm. Workers, 475 U.S. 643, 649 (1986)). However, if the parties clearly and unmistakably agreed to submit the question of arbitrability to the arbitrator, the arbitrator may decide that question and the Court "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances" (i.e., the specific grounds for vacature identified in 9 U.S.C. § 10). Id. at 943 (citing 9 U.S.C. § 10). If the parties have *not* agreed to submit the question of arbitrability to the arbitrator, "then the court should decide that question just as it would decide any other question that the parties did not submit to arbitrator, namely, independently." Id.

7

In applying these principles, the Second Circuit has explained:

> We have found the "clear and unmistakable" provision satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that all disputes necessarily includes disputes as to arbitrability. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir.1996). But we have not reached the same conclusion where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute. See Katz v. Feinberg, 290 F.3d 95, 97 (2d Cir. 2002). In such circumstances, we have identified ambiguity as to the parties' intent to have questions of arbitrability—which would include whether a dispute falls within or outside the scope of the qualifier—decided by an arbitrator. See id.

NASDAQ, 770 F.3d at 1031 (citation omitted).

Here, the Agreement provides that "[a]ny claim or controversy arising out of or relating to this License Agreement shall be settled by arbitration through ADR Services, Inc. in San Francisco, California." (Agreement ¶ 4.5.) Critically, ADR Services Rule 7 also specifies that the Arbitrator has "the power to rule on [his] own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" unless "the issue of arbitrability has been previously determined by the court." (ADR Services Rule 7 (emphasis added).) And, ADR Services Rule 1 states that the "parties shall be deemed to have made these rules," which include both Rule 7 and Rule 11, "a part of their arbitration agreement whenever they have provided for arbitration by ADR Services . . . ." (ADR Services Rule 1.)

In both Katz and NASDAQ, the Second Circuit found that qualifying provisions in the arbitration agreements that arguably excluded certain claims from arbitration created ambiguity on the question of who should decide arbitrability and, thus, mandated that the court, rather than

the arbitrator, decide that question.[3]

However, both Katz and NASDAQ are distinguishable. The arbitration clause in Katz that purportedly reserved arbitrability to the arbitrator was broad, but general, and did not explicitly discuss arbitrability. See Katz v. Feinberg, 167 F. Supp. 2d 556, 560 (S.D.N.Y. 2001), aff'd, 290 F.3d 95 (2d Cir. 2002) ("Except as provided in subsection (i) of this Section 14(g), all disputes under this Agreement . . . shall be settled by arbitration . . . ."). Here, ADR Services Rule 7 explicitly discusses "arbitrability" and makes clear that, with a single exception that is not applicable here, arbitrability is for the arbitrator to decide.[4] As for NASDAQ, the AAA rule reserving arbitrability to the arbitrator at issue in NASDAQ is analogous to the ADR Services Rule 7. See NASDAQ, 770 F.3d at 1032. However, the Second Circuit found that the arbitration agreement at issue in NASDAQ did not "clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provides for the AAA rules to apply to such arbitrations as may arise under the Agreement." Id. at 1032. According to the NASDAQ panel:

> Section 18.A of the [arbitration agreement] carves out certain issues from arbitration, a circumstance that thus <u>delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided</u>. Thus, this case is not akin to those in which we have construed the incorporation of AAA rules into an agreement with a broad arbitration clause to signal the parties' clear and unmistakable intent to submit arbitrability disputes to arbitration.

Id. (emphasis added).

---

[3] Absent Rule 11—the potentially qualifying provision here—it is clear that the language in ADR Services Rule 7, which is identical to Rule 7(a) of the American Arbitration Association ("AAA") Rules, would constitute a clear and unmistakable intent to have the arbitrator, and not the court, decide whether a dispute falls within the arbitration provision. See Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (finding that inclusion of AAA Rule 7(a) in the parties' agreement "serves as clear and unmistakable evidence of the parties' intent to delegate [issues of arbitrability] to an arbitrator"); see also T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 345 (2d Cir. 2010) (stating that the inclusion of ICDR Article 15(1) [identical to AAA Rule 7(a) and ADR Services Rule 7] "constituted clear and unmistakable evidence of the parties' intent to arbitrate questions of arbitrability").

[4] As noted infra in section (A)(3), the qualifying provision in Katz also included much stronger language that excluded a particular dispute from arbitration than the language found in Rule 11.

NASDAQ differs from the instant case, where it is clear that GAC's recusal request was a procedural dispute raised during an ongoing arbitration of claims that were indisputably before the Arbitrator and governed by the ADR Services Rules. Not only was GAC's recusal request made during the ongoing arbitration, but, critically, Rule 11—the purported carve-out—is itself part of the ADR Services Rules. Thus, this is not a situation, like NASDAQ, where an alleged carve-out provision in the arbitration agreement "delays application of [arbitration service provider's] rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided." Id.

Accordingly, it was up to the Arbitrator to interpret the relevant ADR Services and to determine whether GAC's recusal request was arbitrable.

### 3. The Arbitrator's Decision that the Recusal Motion was Arbitrable is Not a Basis to Vacate the Award

GAC contends that the Arbitrator did not have the authority to decide the recusal request because "[ADR Services Rule 11] is an explicit carve-out provision that takes the recusal issue out of the arbitrator's hands and commits it to the court." (GAC Reply Mem. at 1.)

Arbitrators may resolve "only those disputes that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943. Whether the parties have agreed to submit an issue to arbitration "turns upon what the parties' agreed about that matter." Id. (emphasis in original). However, when, as here, the parties agreed to submit the question of arbitrability to the arbitrator, the Court "should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances" (i.e., the specific grounds for vacatur identified in 9 U.S.C. § 10). Id. (citing 9 U.S.C. § 10); see also T.Co. Metals, 592 F.3d at 346.

To succeed in a § 10(a)(4) challenge to an arbitral award, "[i]t is not enough . . . to show that the panel committed an error—or even a serious error." Stolt-Nielsen, 559 U.S. at 671.

Rather, "[i]t is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." Id. (internal quotations and citations omitted). "In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." Id. at 672.

The Arbitrator's decision easily clears this low bar. Here, Rule 11 and ADR Services' other relevant rules are ambiguous in several respects on the issue of whether the arbitrator or court should decide the merits of a recusal motion. The Arbitrator grappled with these ambiguities. As the Arbitrator pointed out, the ADR Services Rules do not even provide any mechanism for ADR Services to refer a matter to a Court and it is not clear how, procedurally, ADR Services could do so. (See Recusal Decision, at 4.) Additionally, Rule 11 is ambiguous as to the timing of the Court's decision on a recusal motion. Rule 11 does not state when the recusal "matter" must be referred to the Court and does not mandate immediate referral of a recusal matter to the Court. Relatedly, Rule 11 does not explicitly preclude an arbitrator from making a preliminary ruling on a recusal request, which could subsequently be reviewed by a court after the completion of the arbitration. The above points make clear that the Arbitrator was engaged in contract interpretation and was not exceeding his powers by making public policy.

In interpreting the ADR Services Rules, the Arbitrator also explained that a contrary interpretation "would permit the disruption of the arbitration proceeding at any time and thus obviate the underlying premise of neutral efficiency that is fundamental to arbitration." (Id.) Notably, this rationale is in accord with the policies of the FAA and the general rules that courts

11

apply in cases under the FAA.[5] It was appropriate for the Arbitrator, in interpreting the Agreement, to address the negative consequences of the interpretation urged by GAC and to consider "the underlying premise of neutral efficiency that is fundamental to arbitration" in interpreting the ambiguities in the ADR Services Rules. (Recusal Decision, at 4.) The Arbitrator's decision here is simply not analogous to the policy making engaged in by the arbitrators in Stolt-Nielsen.

In its opposition papers, GAC insists that the Arbitrator was precluded from considering the merits of its recusal request and that only the Court had any authority to adjudicate that issue. GAC's papers appear to assert that the language in Rule 11—that ADR Services "shall refer the matter to the Court for [conclusive] determination"—is so explicit and clear, that the only possible interpretation of Rule 11 is the one advanced by GAC.

GAC's argument fails because an allegation that an arbitrator simply misinterpreted the contract is not the basis to vacate an award under § 10(a)(4). GAC's argument is also unpersuasive because Rule 11 does not clearly and unequivocally carve out objections to an arbitrator's

---

[5] One default rule under the FAA is that the question of whether an arbitrator should be recused is a "procedural" question that is "presumptively not for the judge, but for an arbitrator to decide." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002). Here, the Arbitrator noted that, "as with most procedural matters in arbitration, the Arbitrator must make the initial decision on such an objection; and that decision is not 'shielded from review' because it can be reviewed by the court that is asked to confirm or set aside the ultimate arbitration award." (Recusal Decision, at 4.)

Additionally, the Arbitrator's rationale is in accordance with Second Circuit precedent precluding challenges to an arbitrator's qualifications or impartiality before a final award is rendered, which the Second Circuit has articulated in the context of various challenges to an arbitration award's validity. See Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n.4 (2d Cir. 1980) ("It is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."); Aviall, Inc. v. Ryder System, Inc., 110 F.3d 892, 895 (2d Cir. 1997) ("Although the FAA provides that a court can vacate an award "[w]here there was evident partiality or corruption in the arbitrators," [9 U.S.C. §] 10(a)(2), it does not provide for pre-award removal of an arbitrator."); Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2d Cir.1984) ("The Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service."). These cases recognize "a prime objective of arbitration law" to "permit a just and expeditious result with a minimum of judicial interference" which can "best be achieved" by requiring an arbitrator "to declare any possible disqualification, and then to leave it to his or her sound judgment to determine whether to withdraw . . . of course be[ing] aware that such a decision would be subject to judicial review after the award has been made." Marc Rich & Co. v. Transmarine Seaways Corp., 443 F. Supp. 386, 387 (S.D.N.Y. 1978). "Any other rule might spawn endless applications and indefinite delay," a point made in the Arbitrator's decision. Id. at 387–88.

continued service from the Arbitrator's jurisdiction. As explained above, there are ambiguities and gaps in both Rule 11 itself and the other relevant ADR Services Rules that justify the Arbitrator's decision. GAC's reliance on <u>Katz</u> is also unavailing because, unlike the carve-out provision in <u>Katz</u>, Rule 11 does not explicitly prohibit the actions taken by Arbitrator here—namely, issuing a preliminary ruling on the recusal motion and preserving the recusal issue for any post-award motions to confirm or vacate a final Award. In <u>Katz</u>, the provision at issue not only provided that independent accountants would make a "final and binding" determination with respect to a particular dispute, but also that such determination would not be subject to "any appeal, <u>arbitration</u>, proceeding, adjustment or review of any nature whatsoever." <u>Katz</u>, 290 F.3d at 98 (emphasis added). Here, neither the ADR Services Rules nor the Agreement itself contain a provision like the one in <u>Katz</u> that explicitly prohibits the Arbitrator from ruling, even preliminarily, on the merits of a party's recusal request during the proceedings. The fact that recusal requests under Rule 11 are subject to the Court's "conclusive" determination does not necessarily mean that the issue is reserved for the Court's "exclusive" determination.

For all of the reasons set forth above, there is no basis to vacate the Award based on the Arbitrator's determination concerning the arbitrability of GAC's recusal request.

**4. Any Purported Error by the Arbitrator in Ruling on the Recusal Motion was Harmless**

In essence, GAC seeks to unravel the entire arbitration based on its argument that the Arbitrator improperly decided GAC's meritless recusal motion, which GAC insists had to be decided by the Court. However, even assuming, <u>arguendo</u>, that GAC's recusal request had to be decided by the Court, any errors by the Arbitrator in ruling on the recusal request and not immediately referring it to the Court were harmless. See <u>Brentwood Med. Assoc. v. United Mine Workers of America</u>, 396 F.3d 237, 243 (3d Cir. 2005) (finding that the arbitrator exceeded his

authority under the parties' agreement but declining to vacate the award because "the arbitrator's error was harmless"). If GAC's recusal request had been immediately referred to the Court, as GAC insists it should have, the Court would have summarily denied the recusal request.[6] Merely hearing allegedly false testimony and making a credibility determination based on such testimony does not warrant the disqualification of an arbitrator from hearing a request by the losing party to reconsider that determination. By GAC's logic, an arbitrator would have to recuse herself whenever a party files a reconsideration motion, which, if granted, would require the judge or arbitrator to admit that her initial ruling, on any matter, was incorrect. The Court notes that ADR Services Rule 10(E) indicates that parties may challenge an arbitrator's continued service based on the grounds listed in Section 170.1 of the California Code of Civil Procedure, which include a catch-all provision requiring disqualification where "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." Cal. Civ. Proc. Code § 170.1(6)(A). GAC's recusal request falls well short of this standard.

Because the Court denies GAC's recusal request (and would have similarly denied it in 2017 if it had been immediately referred), any failure by the Arbitrator or ADR Services to immediately refer the recusal request to the Court was harmless and is not a basis to vacate the Award. Accordingly, the Court denies GAC's motion to vacate the Award and grants Roth's motion to confirm the Award.

B. **Prejudgment Interest is Improper**

In addition to confirmation of the Award, Roth requests post-award, prejudgment interest in the amount of 9% per annum running from November 28, 2017 through the date of entry of

---

[6] Although Roth explicitly argues that any error by the Arbitrator in deciding the recusal request was harmless because the underlying recusal request was meritless, GAC does little, if anything, to argue the merits of its recusal request. Instead, it takes the position that it does not have to prove that the recusal motion would have been granted and only needs to prove that "the Arbitrator violated the agreement." (GAC Reply Mem. at 8.)

judgment on the principal amount of $15,984,448.40 "to compensate Roth for the ensuing delay to final judgment." (Sur-Reply in Supp. of Roth's Mot. to Confirm Arb. Award at 12, ECF No. 45.) GAC opposes Roth's request, arguing that the Court should not award prejudgment interest if it confirms the Award because "[p]rejudgment interest is intended to prevent a plaintiff from being *under*compensated—something that Roth Licensing cannot possibly claim if its award is confirmed" because the Arbitrator "awarded Roth Licensing more than three times its *total* licensing and consulting fees from GAC from 1998 to 2015—for a 26-month infringement period [$4,970,000] . . . trebled the award to [$14,910,000] . . . [and] awarded Roth Licensing more than $1 million in attorney's fees and costs [$1,074,448.35]." (GAC Reply Mem. at 8–9) (emphasis in original). GAC also contends that, if the Court finds prejudgment interest appropriate, the federal post-judgment interest rate should apply. (GAC Reply Mem., at 10.) (see 28 U.S.C. § 1961(a)).

"Although Section 1117(a) [of the Lanham Act] does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases." Am. Honda Motor Co. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990). In exercising such discretion, the court considers "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award; (ii) the remedial purpose of the statute involved; and/or (iv) such other general principles as are deemed relevant by the court." Wickham Contracting Co., Inc v. Local Union No. 3, Int. Bro. of Elec. Workers, AFL-CIO, 955 F.2d 831, 833–834 (2d Cir. 1992); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 314 F. Supp. 2d 201, 203 (S.D.N.Y. 2003), vacated on other grounds, 391 F.3d 77 (2d Cir. 2004) (noting that "it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate"). "The main function of an award of

15

prejudgment interest is to fully compensate a plaintiff for damages suffered." Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993).

The Court, in its discretion, finds that the trebled damages award more than fully compensates Roth for the damages suffered and obviates the need to award prejudgment interest. Under the Lanham Act, "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). If the court finds that the amount of actual damages "based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case . . . [and] [s]uch sum . . . shall constitute compensation and not a penalty." Id. In light of GAC's $22,380,000 total profit during the infringement period, the Arbitrator trebled the damages award from $4,970,000 to $14,910,000 to "deter future infringing conduct" and because "GAC committed willful infringement." (Final Award, at 53.) Because the Arbitrator ultimately awarded Roth three times the amount of the actual damages, the Court deems prejudgment interest unnecessary to fully compensate Roth. See Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 80 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973) (finding that the treble damages provided under the Clayton Act sufficiently compensated the plaintiff and made an award of prejudgment interest unnecessary); see also Bingham, 810 F. Supp at 102 ("Where, as in this case, the Court trebles the damages pursuant to the RICO statute (18 U.S.C. § 1964(c)), awarding prejudgment interest will probably be unnecessary; treble damages usually more than adequately compensate a plaintiff for actual damages suffered.").

Although there is a "presumption in favor of pre-judgment interest" in the Second Circuit, the Court concludes that such relief is not warranted under the facts of this case. See Waterside

Ocean Nav. Co., Inc. v. Int'l Navigation Ltd., 737 F.2d 150, 154 (2d Cir. 1984). By trebling the actual damages award, the Arbitrator adequately compensated Roth for GAC's infringement. Roth's invocation of Waterside and Maney v. United Sanitation, Inc., No. 99-CV-8595, 2000 WL 1191235 (S.D.N.Y. Aug. 21, 2000), in support of awarding prejudgment interest is also unpersuasive because a trebled damages award was not at issue in those cases. See Nu-Life Const. Corp. v. Board of Educ. of City of New York, 789 F. Supp. 103, 104 (E.D.N.Y. 1992) ("[T]he [Second Circuit] has suggested that an award of interest is generally improper where the statute itself provides for treble damages"). Accordingly, the Court finds prejudgment interest improper because Roth received substantial treble damages in the final Award pursuant to Section 1117(a) of the Lanham Act.

While the Court also recognizes the existence of "exceptional circumstances"—such as "where treble damages do not adequately compensate a plaintiff for the actual damages suffered, or where a defendant has sought unreasonably and unfairly to delay or obstruct the course of litigation"—such circumstances are not present here. Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993).

For these reasons, Roth's request for prejudgment interest is denied.

### III. CONCLUSION

For the reasons stated above, GAC's motion to vacate the Award is DENIED and Roth's motion to confirm the arbitration award is GRANTED. Roth's motion for prejudgment interest is also DENIED.

**SO ORDERED.**

Dated: January 11, 2019
Central Islip, New York

                                                                                                  /s/ (JMA)
                                                                                                 JOAN M. AZRACK
                                                                                                 UNITED STATES DISTRICT JUDGE